United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONEWALL TOWERY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>　　　　Defendant.　　　　　　　　　　／ | No. C 07-4037 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS ORDER** |

Plaintiff and defendant have filed cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS to the Social Security Administration for further proceedings consistent with this order.

**BACKGROUND**

Plaintiff is currently fifty-two years old and worked as an airline parts clerk until November 21, 2002, when he suffered a stroke. On January 28, 2004, plaintiff filed a claim for Disability Insurance Benefits alleging disability as a result of the stroke beginning on November 21, 2002. The claim was initially denied on October 29, 2004 and upon reconsideration on March 5, 2005. On September 26, 2006, an Administrative Law Judge ("ALJ") held a hearing on plaintiff's claim. A vocational expert testified at the hearing. In a decision dated November 13, 2006, the ALJ denied plaintiff's claim. AR 15-23. Plaintiff appealed the ALJ's decision to the Social Security Administration Appeals Council, which denied his petition for review on June 7, 2007. On August 6, 2007, plaintiff filed this action

Case 3:07-cv-04037-SI    Document 26    Filed 08/19/2008    Page 2 of 10

seeking judicial review under 42 U.S.C. § 405(g).

Plaintiff claimed that as a result of the stroke, he suffered from loss of memory, residual weakness of his left leg, constant severe headaches, and fatigue. In support of his disability claim, plaintiff submitted evidence showing that he required constant reminders about taking his medication and that his girlfriend, with whom he lived, performed most of the household chores. Plaintiff has not worked since the stroke, but he did enroll part-time in a certificate program in music industries studies and recording art, which he completed in 2006 with a 4.0 grade point average. At the hearing before the ALJ, plaintiff testified that his professors were aware that he had had a stroke, and as a result he was provided accommodations. AR 438-39. Plaintiff testified that he had difficulty getting through lectures and recalling information, and that he tape recorded all of the lectures. *Id*.

The record contains the following medical evidence. An X-ray on June 6, 2002 and an MRI on August 26, 2002 of plaintiff's cervical spine revealed degenerative spondylosis and degenerative disc disease. *Id*. at 271. An echocardiogram dated November 25, 2002 indicated plaintiff had high blood pressure, asymmetrical septal hypertrophy, and cerebrovascular accident with late effects of cerebrovascular disease. *Id*. at 293, 318. A physical residual functional capacity ("RFC") assessment on August 17, 2004 revealed that plaintiff was capable of occasional lifting and/or carrying 10 pounds, frequent lifting and/or carrying of less than 10 pounds, standing and/or walking for at least two hours in a eight-hour workday, and sitting for about six hours in a eight-hour workday. *Id*. at 352.

On November 26, 2002, plaintiff underwent a brief neuropsychological screening with Jeff Kixmiller, Ph.D., who noted plaintiff's mildly depressed mood but found plaintiff's "overall level of cognitive functioning to be consistent with age/peers. Errors made on visual/constructional tasks are suggestive of mild deficit in this cognitive sphere consistent with right-sided stroke." *Id*. at 304. On October 14, 2004, plaintiff attended a consultative psychological evaluation with Mark E. Scott, Ph.D. Dr. Scott found results consistent with a right hemisphere stroke, and stated that plaintiff had "difficulties with visual-spacial processing, motor slowing and memory . . . He may have more difficulty with complex instructions." *Id*. at 324. A psychiatric review on October 25, 2004 indicated that plaintiff had a cognitive disorder, and a mild degree of limitation in restriction of daily activities, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence

or pace. *Id*. at 325-26, 335. The October 25, 2004 review also found that plaintiff had had one or two episodes of decompensation, each of an extended duration. *Id*. at 335. According to a mental RFC assessment, plaintiff was found moderately limited in the ability to understand, remember and carry out detailed instructions. *Id*. at 339. Another neuropsychological evaluation on February 13, 2006 indicated that plaintiff's "immediate and delayed recall of contextual verbal information was low average. He retained 58% of information initially acquired . . . more limited capacity than same-age peers." *Id* at 380. Brian Yochim, the clinical psychologist, recommended that plaintiff may need information presented to him somewhat slowly in order to best learn it. *Id.* at 381.

## LEGAL STANDARD

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984).

The reviewing court has discretion to remand a case for further evidence, or to award benefits. *Moore v. Comm'r Soc. Sec. Admin.*, 278 F. 3d 920, 926 (9th Cir. 2002). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

## DISCUSSION

The ALJ evaluates disability cases using a five-step evaluation process established by the Social Security Administration. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); *see also* 20 C.F. R.

1  § 404.1520. In the first two steps, the claimant must establish that he or she is (1) not performing
2  substantial gainful work and (2) not performing substantial gainful work due to a "severe" impairment.
3  20 C.F. R. § 404.1520. An impairment must have lasted or be expected to last twelve months in order
4  to be considered severe. 20 C.F.R. § 404.1509. In the third step, the claimant must establish that his
5  or her impairment meets or medically equals a listed impairment described in the administrative
6  regulations. 20 C.F.R. § 404.1520. If the claimant's impairment does not meet or equal one of the listed
7  impairments, the evaluation proceeds to the fourth step, in which the claimant must establish that his
8  impairment prevents him from performing relevant work he did in the past. *Id.* In the fifth step, the
9  Commissioner must demonstrate that the claimant is able to do other work, and that there are a
10 significant number of jobs in the national economy that claimant can do. *Tackett*, 180 F.3d at 1099.
11 The Commissioner may meet the burden of showing there is other work in significant numbers in the
12 national economy that claimant can perform by relying upon the testimony of a vocational expert. *Id.*
13 The burden of proof is on the claimant as to the first four steps. *Id.* at 1098. The burden shifts to the
14 Commissioner for the fifth step. *Id.*

15 Here, at the first two steps of the evaluation process the ALJ found that plaintiff had not engaged
16 in substantial gainful activity since November 21, 2002, and that plaintiff had the severe impairments
17 of degenerative disc disease, spondylosis of the cervical spine, and status-post cerebral-vascular accident
18 with residual left sided weakness. AR 17. However, the ALJ found that plaintiff did not have a severe
19 mental impairment. *Id.* At the third step of the analysis, the ALJ held that plaintiff did not have an
20 impairment or combination of impairments that met or medically equaled one of the listed impairments
21 in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ concluded that plaintiff
22 cannot perform the requirements of his past relevant work. *Id*. at 19. Finally, at the fifth step the ALJ
23 found that plaintiff had the residual functional capacity to perform work at the "sedentary exertional
24 activity level," which would allow him to adjust to other work existing in the national economy. *Id*. at
25 20.

26 On review to this Court, plaintiff raises three contentions. First, plaintiff contends that the ALJ
27 erred by concluding that he did not have a severe mental impairment. Second, plaintiff contends that
28 the ALJ improperly discredited plaintiff's subjective complaints based upon an incorrect perception of

4

1 plaintiff's activities of daily living and his completion of the music certificate program.  Third, and
2 relatedly, plaintiff contends that even if his mental impairment is not considered severe, the ALJ erred
3 by not considering his mental impairment when the ALJ posed a hypothetical question to the vocational
4 expert that did not include plaintiff's mental limitations, and by concluding that plaintiff can perform
5 other work without regard to his mental limitations.

**I.     Evaluation of mental impairment**

At step two of the disability evaluation, the ALJ found that although plaintiff alleged that he had a cognitive disorder, plaintiff's mental restrictions were not sufficiently serious to constitute a severe medically determinable mental impairment.  AR 18.  The ALJ reviewed the evidence in the record regarding plaintiff's mental state and capabilities, and concluded "[t]aking all of the above into consideration, particularly claimant's performance on psychometric testing and his ability to maintain a 4.0 GPA in a college-level music program, I find that a 'severe' mental medically determinable impairment has not been established."  *Id*. at 19.  The ALJ noted that plaintiff stated that he had problems with his memory; that Dr. Scott opined that plaintiff would be able to understand and carry out simple instructions but may have more difficulty with complex instructions; and that a November 2005 psychological evaluation indicated plaintiff was "within the normal range," had "no frank impairments in cognitive functioning," although plaintiff "may need information presented to him somewhat slowly in order to best learn it."  *Id.* at 18.

Plaintiff contends that the ALJ wrongly concluded that he did not suffer from a severe mental impairment.  Plaintiff argues that the October 25, 2004 psychiatric review establishes that he has a severe mental impairment because the doctor who completed the review checked the box "RFC Assessment Necessary," and did not mark the box "Impairment Not Severe."  *Id*. at 325.  Plaintiff argues that this necessarily means that the doctor found that plaintiff has a severe mental impairment.  Plaintiff does not cite any authority for this contention, and in the absence of an affirmative statement that plaintiff has a severe mental impairment, the Court cannot draw the conclusion that plaintiff advocates.

Plaintiff also contends that his severe mental impairment is supported by Dr. Scott's psychological evaluation stating that plaintiff had "significant" short-term memory difficulties, and Dr.

Yochim's neuropsychological test finding plaintiff to be in the "low average" range in tasks involving speed processing. *Id*. at 324, 380.

The Court finds that the medical evidence is equivocal, and that the ALJ's decision that plaintiff's mental impairment was not severe could be supported by substantial evidence. However, on this record the Court cannot affirm the ALJ's decision in this regard because in finding that plaintiff did not have a severe mental impairment, the ALJ also gave particular weight to the fact that plaintiff maintained a 4.0 grade point average in the music certification program. Plaintiff testified that he had attended school part-time,[1] and that while he graduated with a 4.0 grade point average, he experienced difficulties in the program:

> The hardest part for me was just sitting through lectures and recalling information after I got home and tried to do homework. What I did was in order to help with that was to try to take as best good notes [as] I could and then I would study. Instead of studying two or three days before a test or anything, I would study the night before a test and then that way I would still retain the information. My hardest part was being able to sit for a long time and listen to lectures because I have numbness in my hands and feet when I sit for more than 30 minutes. And so I had to stand quite often just so that I could shake out the numbness.

AR 438. Plaintiff testified that his professors were aware of these problems, and that as a result they did not require plaintiff to move any heavy music equipment. *Id*. Plaintiff also testified about his memory problems:

> I use a tape recorder in almost every class. That was the only way that I could really get the information back after class. Because if I tried to remember the information, I found that out very quickly after I went back to school. I hadn't been to school in years. So immediately I realized I can't remember this stuff, you know, when I get home. So I took a tape recorder, I would tape everything, then when I got home then I could listen to the tape recorder over and over and try to push that into my head so that I could remember.

*Id*. at 439. This testimony is consistent with the numerous medical reports showing that plaintiff suffers from memory and information recall deficits. The fact that plaintiff graduated with a 4.0 grade point average must be viewed in the proper context, namely the challenges about which plaintiff testified, as well as the compensating techniques that he used. On remand, the ALJ must reconsider all of the

---

[1] The Court notes an apparent discrepancy in the record regarding plaintiff's attendance in the music program. Plaintiff testified that he had attended part-time (10 units per semester), AR 436, while the ALJ, citing a neuropsychosocial evaluation, stated that plaintiff attended school full-time. *Id*. at 18, 379. This misunderstanding may have also led the ALJ to give undue weight to plaintiff's music certificate.

6

evidence regarding plaintiff's mental impairment to determine whether those limitations are severe.

## II.     Plaintiff's credibility

Plaintiff also contends that the ALJ improperly found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR at 21. The ALJ noted that plaintiff had primarily received "routine" care since his stroke, and that there did not seem to be any significant or long term complications following the stroke. *Id*. The ALJ also noted that plaintiff "indicated in his interview with the Department of Rehabilitation (Exhibit 1F, page 3) that he had recovered 'fairly well' and was interested in pursuing recording studio work. Indeed, he has returned to college and has been very successful there. This belies his claim of a 'severe' cognitive disorder and tends to diminish his credibility. There is no evidence of chronic pain treatment, adverse reaction to medications or any other explanation as to why the claimant's daily activities should be limited." *Id*. at 22. The ALJ's credibility determinations are relevant to the determination of plaintiff's residual functional capacity and ability to perform other work.

Plaintiff contends that the ALJ improperly rejected plaintiff's subjective complaints based on his perception of plaintiff's activities of daily living, and how those activities relate to an ability to work. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first find whether the claimant's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Then, the ALJ can reject the claimant's testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Here, the ALJ found that plaintiff's impairments could reasonably be expected to produce pain and other alleged symptoms, fulfilling the first requirement, and thus the ALJ was required to provide clear and convincing reasons for discrediting plaintiff's subjective complaints.

The Court finds that the ALJ did not meet this standard. As discussed above, the Court finds that the ALJ overstated the significance of plaintiff's completion of and performance in the music certificate program. Similarly, although plaintiff also testified that his goal was to obtain a recording

7

engineering degree and "to possibly work in my own little studio at home, you know, turning out hits," AR at 443, this testimony is not a basis for discrediting plaintiff's subjective complaints. The fact that plaintiff aspires to obtain another degree and wants to pursue studio recording work in his home does not mean that plaintiff is not limited in the various ways he claims. Plaintiff also testified that although he used to be the lead singer in a band and formerly knew the lyrics to many songs, after the stroke he could not remember any songs, including songs he had written. *Id*. at 441-42.

Similarly, although plaintiff is able to independently perform some activities of daily living, plaintiff testified about the difficulties he encountered in doing so, and also about the many limitations he experienced in his daily life. Plaintiff testified that the only household chore he is able to perform is taking out the trash, and that he could perform that chore because the trash can is on wheels. *Id*. at 439. Plaintiff testified that his girlfriend, with whom he lives, "does everything," including "[s]he helps me to remember all of my doctor's appointments, she helps me to remember my medications, she helps me to remember, basically she helps me to remember practically everything, including bills that need to be paid, and anything in regard to that's routine, that needs to be done." *Id*. Plaintiff testified that since the stroke, he experienced frequent dizzy spells, severe headaches, and weakness. *Id*. at 440-41.

Accordingly, on remand the ALJ must reassess the evidence in the record and, if the ALJ continues to discount any of plaintiff's subjective complaints, must provide clear and convincing reasons for doing so consistent with this order. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (evidence that claimant could assist with household chores was not determinative of disability; a claimant need not "vegetate in a dark room excluded from all forms of human and social activity" to be unable to engage in substantial gainful activity).

### III.    Plaintiff's residual functional capacity

At the fourth and fifth steps of the sequential evaluation process, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform work at the sedentary exertional level. *Id*. at 20-21. The ALJ found that plaintiff could not do his past relevant work as an airline parts clerk/order puller, warehouse supervisor, and stores clerk, all of which plaintiff performed at light to heavy levels of exertion. *Id*. at 22. At the fifth stage of the process, where the burden of proof is on the

Commissioner, the ALJ found that plaintiff could perform other work at the sedentary exertional activity level. In reaching this finding, the ALJ relied on the testimony of a vocational expert, who testified that an individual with plaintiff's physical limitations and work history could perform work as an aircraft logging clerk, semi-skilled. *Id.* at 23.

Plaintiff contends that the ALJ erred by not adequately considering his mental impairment in formulating the RFC assessment. Plaintiff contends that even if his mental limitations do not rise to the level of being "severe," the ALJ was still required to consider his mental limitations when evaluating whether there is any work that he could still perform. Plaintiff argues that the duties of an aircraft logging clerk require abilities beyond plaintiff's mental limitations, such as the ability to be alert, pay close attention to detail, and perform non-simple tasks. *See* Dictionary of Occupational Titles 221.362-010 (4th ed. 1991) ("Aircraft-Log Clerk") (description of duties including "Keeps records of usage and time intervals between inspection and maintenance of designated airplane parts: Compiles data from flight schedules and computes and posts amount of time airplanes and individual parts are in use daily, using calculating machine.").[2] Further, plaintiff again argues that the ALJ overly relied on plaintiff's ability to maintain a 4.0 GPA in a college-level music program in finding that he could still work at the sedentary exertional level.

In assessing plaintiff's RFC and determining that plaintiff could work as an aircraft log clerk, the ALJ did not discuss plaintiff's mental limitations, and the hypothetical that the ALJ posed to the vocational expert did not include any mental limitations. For all of the reasons discussed above, on remand the ALJ must reassess whether plaintiff has a severe mental limitation, and must also reassess plaintiff's subjective complaints. Even if the ALJ concludes on remand that plaintiff's mental impairment is not severe, the ALJ must consider *all* impairments, severe and nonsevere, in the remaining steps. *See* 20 C.F.R. § 404.1545(e) (2008). The evidence indicates that plaintiff is moderately limited in his ability to understand and remember detailed instructions, and in the ability to carry out detailed instructions. The ALJ did not explain how an individual with those limitations may still perform the job of an aircraft logging clerk. Further, in response to questioning by plaintiff's

---

[2] Attached as Exhibit A to plaintiff's motion.

attorney, the vocational expert testified that difficulties in retaining and recalling information "could possibly have significant impact on" the ability to perform the job of an aircraft logging clerk, which requires independent reasoning. AR at 447. Therefore, the ALJ's conclusion is not supported by sufficient evidence and must be remanded for further administrative proceedings regarding plaintiff's ability to perform the duties of an aircraft logging clerk.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for summary judgment, DENIES defendant's motion, and REMANDS for further administrative proceedings consistent with this order. (Docket Nos.17, 22).

**IT IS SO ORDERED.**

Dated: August 19, 2008

SUSAN ILLSTON
United States District Judge